UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANTY SURRATT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROGER WALKER, Director of IDOC, )<br>DEBBIE DENNING, Deputy Director of IDOC, )<br>MARY SIGLER, Warden of Dwight )<br>Correctional Center, DEBBIE WINTERS, )<br>Lieutenant at Dwight Correctional Center, )<br>RONALD ROBINSON, Correctional Officer, )<br>)<br>Defendants, in their individual )<br>capacities. ) | Case No. 08-01228 |

## O R D E R

Now before the Court is Defendants Roger Walker, Debbie Denning, Mary Sigler, and Debbie Winters' ("Individual Defendants") Motion for Summary Judgment [#38]. For the reasons set forth below, the Motion is GRANTED.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as the claim asserted in the Complaint presents a federal question under the United States Constitution.

### BACKGROUND

On September 9, 2006, Plaintiff Brandy Surratt ("Surratt") was housed in Dwight Correctional Center in Illinois for armed robbery and conspiracy to commit armed robbery. At

1

this time, Defendant Roger Walker ("Walker") was the Director of the Illinois Department of Corrections ("IDOC"), and Defendant Debbie Denning was the deputy director of IDOC. Defendant Mary Sigler ("Sigler") was the warden of Dwight Correctional Center ("Dwight"), and Defendant Debbie Winters was a lieutenant at Dwight. Defendant Ronald Robinson was a correctional officer employed by IDOC and working at Dwight.

On September 10, 2006, at approximately 9:00 a.m., Defendant Robinson entered Surratt's cell at Dwight and allegedly sexually assaulted her. Surratt did not report the incident until April 2007 when she discussed the incident with a Dwight counselor who formally made a report to Lieutenant Debbie Winters ("Winters") of internal affairs. During the investigation, Surratt learned that she was not the only female inmate to report Robinson for inappropriate conduct.

On March 4, 2005, an inmate known as "A.M." reported that Robinson had sexually assaulted her. These allegations were investigated, and Mary Hodge, the Chief of the Investigations and Intelligence Unit found the claims were unsubstantiated. During the investigation into Robinson, other inmates discussed Robinson's inappropriate and flirtatious behavior while some inmates stated that Robinson behaved professionally. On April 25, 2006, Robinson allegedly made sexual advances toward Dwight inmate Shawntay Wright ("Wright"). Wright's case was investigated, and her claims were found to be unsubstantiated. She was disciplined for filing an allegedly false report against Robinson.

This action was filed on September 5, 2008, by Brandy Surratt against Individual Defendants and Robinson. Surratt also named Assistant Warden of Dwight Pamela Harris and two investigators for internal affairs for IDOC, Grant Ogburn and Lynn Hodges. Surratt

2

voluntarily dismissed her claims against these three parties on December 22, 2010. Surratt is suing Individual Defendants as a result of their alleged deliberate indifference to the need for protection under section 1983 (Count Two). Surratt also brough the following claims against Defendant Robinson, who is not a party to this motion and has not answered or otherwise responded to Plaintiff's complaint: (1) Eighth Amendment violation for unnecessary and unwanted infliction of pain (Count One); (2) assault and battery (Count Three); (3) sexual abuse (Count Four); and (4) intentional infliction of emotional distress as a result of the sexual abuse (Count Five). Individual Defendants now move for summary judgment on the pending claim against them. The matter has been fully briefed, and this Order follows.

## DISCUSSION

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine material issue for trial. *Celotex Corp.*, 477 U.S. at 324. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 931 (7th Cir. 1995). Finally, where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

## I. Deliberate Indifference

In order to survive a motion for summary judgment on a claim of deliberate indifference under the Eighth Amendment of the U.S. Constitution, a plaintiff must establish that (1) the danger to an inmate was objectively serious; (2) the danger posed a substantial risk of harm; and (3) the officials knew of the risk and consciously disregarded it. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). It is undisputed that danger from sexual assault in prison from a prison official is objectively serious. Defendants do, however, argue that the danger did not pose a substantial risk of harm to the Plaintiff and that the prison officials did not know of the risk. Defendants also claim that they took appropriate action to address any known dangers to the inmates and, specifically, to prevent sexual assault.

### A. Actual notice

In order to establish liability, the plaintiff must show that the defendants had actual

knowledge that the inmate faced a "substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it." *O'Brien v. Indiana Dept. of Corrections ex rel. Turner*, 495 F.3d 505, 508 (7th Cir. 2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 1970 (1994)); *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005).

Defendants argue that they did not have actual knowledge that Plaintiff was in danger of suffering a sexual assault from Robinson. Before Surratt's sexual assault took place, Robinson was accused twice of sexual misconduct when dealing with inmates. The first incident involved a prisoner known to the Court as A.M. In March of 2005, A.M. reported that Robinson had inappropriately touched her. After an initial inquiry, the matter was referred to the Illinois Department of Corrections' Investigations Unit in Springfield for an external investigation. At the conclusion of that investigation, the Springfield Unit declared the allegations to be unsubstantiated, and A.M. was disciplined for giving allegedly false information. The second incident, in April of 2006, involved an inmate named Shawntay Wright ("Wright"), who claimed that Robinson had made inappropriate comments to her following a vaginal and anal exam that he allegedly witnessed. Wright's case was investigated, and her claims were found to be unsubstantiated. Wright was disciplined for filing an allegedly false report against Robinson.

During the 2005 investigation, several prisoners stated that Robinson flirted with the inmates, and a separate prisoner reported that Robinson made comments to inmates about meeting him in a closet. It is undisputed that Defendants Walker and Denning were sent copies of the investigative report of the 2005 incident containing these statements and allegations. While there is a dispute as to how much Defendant Winters knew of the A.M. investigation, it is undisputed that Defendant Winters conducted the investigation into Wright's allegations against

Robinson. It is also undisputed that Defendant Sigler concurred with Defendant Winters' recommendation that the claims were unsubstantiated and that Wright should be disciplined for filing an allegedly false accusation.

Plaintiff argues that these incidents, coupled with a general knowledge of the existence of sexual assaults in prisons, gave the Defendants actual knowledge of the risk Robinson posed to the female inmates at Dwight. While these reports of Anderson's alleged conduct may have given Defendants actual notice of the danger he posed to female inmates, these claims were found to be unsubstantiated. Furthermore, the claims were found to be unsubstantiated based on the testimony and findings of non-Defendants who did not work at Dwight. In A.W.'s case, departmental investigator in Springfield found that the claim was unsubstantiated. In Wright's situation, the doctor who conducted Wright's physical exam testified that Wright's allegations of Anderson's alleged misconduct were unfounded. Thus, there was no reason for Defendants to conclude that Anderson was actually acting improperly towards the inmates at Dwight.

Plaintiff also contends that Defendants had general knowledge of the risk of harm to prisoners of sexual assault by guards on account of the Defendants' admissions that they were aware that sexual assaults took place in prison. While the Court notes that the risk of sexual assault in jail is a serious concern, general knowledge of a potential danger does not equate to actual knowledge of the specific risk of serious harm. *See Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (finding that the defendant must have actual knowledge of the specific risk of serious harm). Thus, a reasonable jury could not find that Defendants had actual knowledge of the risk of sexual assault perpetrated by Anderson at Dwight.

B.  **Substantial risk of harm**

Even if there was a genuine issue of material fact as to whether Defendants had actual notice of the risk posed to Plaintiff by Anderson, Plaintiff must still establish that she was at a substantial risk of harm. A plaintiff may prove that she was at a substantial risk of serious harm based on the defendants' inferred knowledge due to a general and pervasive risk of harm. *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992) (citing cases). Deliberate indifference claims may not, however, merely be supported by knowledge of general risks of violence in prison. *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000).

Defendants assert that there was not a pervasive danger of sexual assaults in Dwight that would have put Plaintiff at substantial risk of serious harm. Defendant supports this argument by stating that there were only two substantiated incidents of custodial sexual misconduct in Dwight from 2004-2006. While Plaintiff does not provide competing statistics, she does assert that these numbers only indicate a pervasive defect in general prison procedures emboldening perpetrators and frightening victims. Plaintiff also provides the testimony of an expert witness to support her contention that there was a pervasive risk of sexual assault at Dwight. The expert witness, Robert Dumond, provided a statement [Ex.4 to #40] detailing the history of sexual assaults in female prisons across the country as well as the legal framework surrounding the attempted eradication of this form of violence. Dumond, in his statement, also synthesizes the exhibits and provided facts in this case and makes his own conclusory findings.

This information, however, is insufficient to establish a genuine issue of material fact. In *James v. Milwaukee County*, the Seventh Circuit found that the plaintiff could not demonstrate a substantial risk when the plaintiff "offers no concrete proof, such as statistical or comparative

7

evidence to show [that the prison's policy] resulted in increased . . . violence." 956 F.2d at 701.
In this case, Plaintiff provides no such concrete evidence of a greater risk of harm other than general statistics regarding the number of female inmates who were victims of sexual abuse before being incarcerated and an international awareness of the dangers of sexual assault in female prisons. While the expert does state that Dwight's failure to implement certain policies may have been a factor contributing to increased violence, he provides no evidence of this fact to contradict Defendants' statistics regarding the number of instances of substantiated claims of sexual assault at Dwight in the last several years. Additionally, Plaintiff does not specify what policies have the affect of emboldening perpetrators and frightening victims. As such, there is no genuine issue of material fact as to whether there was a pervasive risk of harm at Dwight beyond general risk of violence in prison.

      C.      **Precautionary measures**

Even if Plaintiff could establish a genuine issue of material fact that Defendants were actually aware of a substantial risk of harm, a finding of deliberate indifference also requires that the defendant intentionally disregarded the known risk to inmate safety. *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). A defendant's actions must be considered reckless, and a defendant need not "take perfect action or even reasonable action." *Id.* (quoting *Cavelieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003). Furthermore, the possibility of better policies or procedures does not necessarily mean that the Defendants were being deliberately indifferent through their chosen policies. *Id.*

Defendants argue that they addressed all reports of alleged sexual assault appropriately and took reasonable measures to abate any risk of further incidents of sexual assault. Plaintiff

8

cites to the following facts to support her argument that Defendants were deliberately indifferent: (1) inmates were punished for reporting alleged sexual assault; (2) Defendants failed to install cameras in Dwight before 2008; (3) Defendants accepted the testimony of staff over that of prisoners; (4) Defendants failed to assign only female officers to Dwight; (5) Defendants failed to implement the Prison Rape Elimination Act; and (6) Defendants failed to insure the use of proper investigatory techniques.

Not one of the complaints in Plaintiff's laundry list of grievances would allow a jury to infer that Defendants recklessly or intentionally disregarded a known risk of sexual assault. Instead, the record shows that Defendants investigated each incident of alleged sexual assault initially and, upon additional evidence, transferred the investigation to the Investigations and Intelligence Unit. Nothing in Plaintiff's arguments or proffered evidence establishes a reckless non-conformity with the Prison Rape Elimination Act, and Plaintiff furthermore does not cite to any requirement that a female prison only employ female officers, maintain security cameras in housing blocks, or use specific investigatory techniques.

The deliberate indifference test imposes a "high hurdle" for plaintiffs to overcome. *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). While the Court is not unsympathetic to the abuse that Plaintiff suffered while an inmate at Dwight, the record now before this Court does not support an inference that the Defendants intentionally disregarded a known, imminent risk of sexual assault.

## II. Qualified Immunity

Defendants assert that Plaintiff's claims are barred by the doctrine of qualified immunity. In order to establish whether an official is entitled to qualified immunity, the Court must

consider (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200; 121 S.Ct. 2151, 2155 (2001). As this Court has already found that no genuine issue of material fact exists as to whether the Defendants were deliberately indifferent to Plaintiff's safety, this issue is moot to the resolution of the case.

## CONCLUSION

While Surratt's risk of sexual assault was objectively serious, Plaintiff cannot establish that Individual Defendants had actual notice of this risk nor that they were deliberately indifferent. Therefore, for the reasons set forth above, Individual Defendants' Motion for Summary Judgment is GRANTED. This case is referred to the Magistrate Judge for further proceedings involving the remaining defendant.

Entered this  29th  day of March, 2011.

 s/ Michael M. Mihm 

Michael M. Mihm
United States District Judge